

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAN KOWALSKI and ZIFF SISTRUNK,

    Plaintiffs,

    -against-

COOK COUNTY OFFICERS' ELECTORAL BOARD,
DAVID ORR in his official capacity as Cook County
Clerk and Chairman, ANITA ALVAREZ, in her official
capacity as Cook County State's Attorney and Member,
AND DOROTHY BROWN, in her official capacity as
Clerk of the Circuit Court of Cook County and Member,

    Defendants.

Reply to Motion for Injunctive Relief and for Mandamus

Case No. 16 CV 1891

Judge Darrah

### REPLY TO MOTION FOR INJUNCTIVE RELIEF AND MANDAMUS

NOW COMES the Plaintiffs, JAN KOWALSKI ("Jan") and ZIFF SISTRUNK ("Ziff"), by and through their attorney, ROBERT M. KOWALSKI, and for their Reply to their Motion for Injunctive Relief pursuant to Federal Rule of Civil Procedure 65 and Mandamus pursuant to Federal Rule of Civil Procedure 81(b), states as follows:

#### I.     Reply as to Injunctive Relief

1. On January 27, 2016, the Cook County trial court denied Jan's Petition for Administrative Review of the Cook County Officers' Electoral Board's ("CCOEB") December 30, 2015 Decision, an Illinois statutory claim. Previously, Jan voluntarily dismissed her Section 1983, voting rights and RICO counts, as pendent jurisdiction had terminated.

2. On February 16, 2016, the Illinois Appellate Court affirmed the denial of Jan's Petition for Administrative Review, an Illinois state law statutory based claim.

3. On February 22, 2016, Jan filed her Petition for Leave to Appeal to the Illinois Supreme Court. On February 23, 2016, an Emergency Motion for Expedited Consideration and Emergency for Stay was filed, which remain pending and undetermined.

4. Jan's name has been removed from the ballot for the March 15, 2016 primary election. Early and absentee voting has already commenced.

5. In the event this Court fails to issue a preliminary injunction, Jan and Ziff will be deprived of any remedy as the normal election cycle will have concluded and a new or special election is an extremely rare remedy.

6. Contrary to the CCOEB's argument, no court has ever held that an adequate remedy at law is the possibility that another court may rule in their favor.

7. Rather, Judge Posner in *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) noted that "[o]nly if plaintiff will suffer irreparable harm in the interim [till the end of trial]—that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can he get a preliminary injunction." By inadequate, "we mean seriously deficient as a remedy for the harm suffered." A damage remedy can be inadequate if it comes too late or the nature of plaintiff's loss. Id. Money damages are insufficient to compensate Plaintiff Ziff for the violation of his voting rights and the absence of his First and Fifteenth Amendment Rights to vote for a candidate of his choosing. The irreparable harm to Jan and Ziff is inadequate as, absent issuance of injunctive relief or mandamus, any relief will come too late, as the election will be held on March 15, 2016.

8. The court must also consider any irreparable harm that the defendant might suffer from the injunction. *Id.* at 387. The CCOEB will suffer absolutely no harm in printing Jan's name on the March 15, 2016 primary ballot.

9. Jan and Ziff have more than "some likelihood of succeeding on the merits." The threshold is low: It is enough that "the plaintiff's chances are better than negligible." *Omega Satellite Products Co. v. City of Indianapolis*, 694 F.2d at 123. The more likely Jan and Ziff are to win, the less heavily need the balance of harms weigh in their favor. *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380,

387 (7th Cir. 1984). Clear evidence of irreparable injury should result in a less stringent requirement of certainty of victory. *Id.* at 388, citing Developments in the Law, Injunctions, 78 Harv.L.Rev. 994, 1056 (1965).

10. The task for the district judge in deciding whether to grant a motion for preliminary injunction is to minimize errors: the error of denying an injunction to one who will go on to win the case on the merits and the error of granting an injunction to one who will go on to lose. The judge must try to avoid the error that is most costly. *Roland Machinery Co., id.* at 388. The error of denying an injunction is more costly the greater the magnitude of the harm that the plaintiffs will incur form the denial and the greater the probability that his legal rights really have been infringed. *Id.*

11. An order granting a preliminary injunction will have consequences beyond the immediate parties which "public interest" must be reckoned into the weighing process. *See Yakus v. United States*, 321 U.S. 414, 440-41, 64 S.Ct. 660, 674-75, 88 L.Ed. 834 (1944). The public interest in this case is that of Jan's 13,740 supporters whose First Amendment Rights to further their political views through the candidate of their choice are being thwarted. In addition, Jan's political views may well prove more receptive to a great majority of voters than the incumbent's. The public interest is that of the almost 3,000,000 registered voters in Cook County who unfortunately will not have any choice whatsoever. They will only see the incumbent on their ballot - but for action by this Court.

12. Jan's likelihood of success is palpable, much greater than negligible. The objection process was rife with abuse for political purposes. A rigged end result does not sanction the means. The <u>only</u> fact that could not, should not, or ever have changed, under any circumstances, was Jan's submission of <u>13,740</u> signatures, needing only 5,365. However, even this fact was manipulated. Only 13,414 signatures received review by the "completion?" of the records examination.

13. The CCOEB disingenuously claims at page 6 the fact Jan collected 13,740 signatures has no merit. The converse is abundantly true. Jan needed only 5,365 signatures and submitted 13,740. Clearly, the sheer number of signatures has enormous significance. The CCOEB suggests Jan should have collected "an excess of signatures in an attempt to secure an adequate number of valid ones." This tacit

3

admission is troubling, since the CCOEB didn't even manage to count the ones Jan did submit! A candidate should not have to plan, based upon the knowledge that the CCOEB may unilaterally decline to count portions of a Petition. Obviously enough, securing almost three times the required number is not excessive enough to counteract the CCOEB's "devil's in the details approach" to deprive voting rights. These tactics fall squarely upon the prohibition of such contained in Section two of the Voting Rights Act. The CCOEB's procedures cause a significant disproportionate actual discriminatory restrictive effect upon minority voters' rights. Jan's circulators largely came from and worked in largely African-American neighborhoods in South Shore, Woodlawn, Englewood, etc.

14. The CCOEB claims at page 6 Jan never admitted all of her signatures meet the legal requirement. This is false. Section 10-8 of the Illinois Election Code provides that the Candidate's signatures are accorded a presumption of validity.

15. The CCOEB attempts at page 6 to claim Jan admitted 7,965 signatures were invalid. Incredibly, CCOEB relies upon Jan's Rule 8 motion which the CCOEB did not deign to entertain! CCOEB now claims that by seeking to rehabilitate only 638 signatures, Jan impliedly admitted 7,965 signatures were inadequate. This argument overlooks that Jan sought to rehabilitate 638 signatures because she only needed to rehabilitate 315 signatures (after counting the discarded 230 signatures never counted).

16. Rigged results cannot justify the CCOEB's abuse of its process disallowing 8,600 signatures. The CCOEB acknowledged the process generally yields 50% of signatures being valid. The CCOEB process didn't yield anything close to a 50% validity rate for Jan's signatures; it yielded a mere 15%. The CCOEB abused the process by:

    a. improperly scanning Jan's Nomination Petition to omit 23 pages.
    b. refusing to examine 230 signatures. The CCOEB's most important statutory duty is to count signatures to safeguard our most cherished right. The burden is on the CCOEB to count signatures; not the candidate.
    c. refusing to synchronize Cook County and City of Chicago voting systems. Thousands of registered voters were located, replete with voter ID numbers in the Chicago Board of Election computer system. These voters were mysteriously "not in system" for purposes

4

of the Cook County Board of Election records examination. The failure of the CCOEB to locate registered voters is even more suspect given the CCOEB admission at page 6 that the County Clerk and the Chicago Board have long maintained a "joint petition project" which uses an amalgamated database of voter registrations from both and that is always current. The CCOEB fails to explain how in this "always current" amalgamated database why Jan is registered at a LaGrange address in the CCOEB's computer and at a Chicago address in the Chicago Board's computer. Apparently, Jan can now vote "early and often" – notwithstanding the "always current" amalgamated database. Clearly, the strangely out of whack not seamless system was used for Jan's signature check.

d. prohibiting Jan's watcher.

e. disallowing Jan's own signature.

f. refusing to mark Jan's objections.

g. sustaining valid signatures, becoming signature experts:

| Jan's Petition | Voter's Record |
|---|---|
| (signature) | (signature) |
| (signature) | (signature) |
| (signature) | (signature) |
| (signature) | (signature) |

h. claiming the records examination was "complete", triggering Rule 8, even though 230 signatures were never even examined.

i. Incrementally changing amount of Petition pages submitted on a daily basis consistently diminishing, never increasing.

j. Failing to provide Jan with a daily summary on two days as it was "unavailable."

k. claiming the records examination was "complete" because a daily report indicated 0 objections remaining. Similarly, another candidate's records examination was "complete" when the daily report indicated negative two (-2) objections remaining

5

confirming haphazard and sloppy CCOEB practices (See *Jackson v. Hardiman*, 15 COEB CC02).

l. ignoring that each and every daily report acknowledged "completion of the records examination".

m. finding the Rule 8 twenty-four hour period triggered by the daily report, rather than the CCOEB's attorney's confirmation.

n. finding Jan's Rule 8 Motion, filed within 24 hours of the attorney's confirmation, was not timely.

o. failing to provide Jan with a Rule 8 hearing.

p. disallowing Jan's Rule 11 Motion for allowance of her "tardy" Rule 8 Motion. Jan was the first records examination completed and the first of ten candidates removed. There was ample time for a Rule 8 hearing and no prejudice to Objector.

q. finding Objector's Rule 8 Motion sufficient, even though it failed to strictly comply with Rule 8, lacking an appendix of signatures sought to be rehabilitated.

r. ignoring 767 Affidavits of Candidate's disallowed signers.

s. refusing to recuse themselves, although one CCOEB Member employs incumbent's husband and another CCOEB Member is incumbent's attorney. The CCOEB Members connections reflect more than just political allies. Neither did they recuse themselves from passing on the Objection to incumbent's Petition.

t. refusing to designate a "designee" in writing.

u. permitting a "clerk?" to vote at the CCOEB hearing, not even a designee.

v. failing to allow Jan's attorney to address the "Board" claiming he was "out of order" and threatening him with an ARDC inquiry.

w. disseminating a pre-printed typewritten Decision at an "open?" meeting.

x. failing to have the Decision signed by the elected CCOEB Members – not anonymous designees.

6

y. failing to have even one single elected CCOEB Member present - ever.

z. conducting a "records" exam as to Jan's 13,740 signatures but <u>not</u> requiring one for incumbent's 15,000 signatures as it would "invite … objections for improper purposes, such as to harass candidates." See *Sistrunk v. Yarbrough*, 2015 COEB CC05.

aa. Allowing former "silver shovel" felon to intimidate and direct CCOEB staff during the records examination.

17. Had the CCOEB followed its own procedures, reliance upon the curative properties of Rule 8 is understandable. Conversely, this candidate was not provided a Rule 8 opportunity, quite the contrary. The CCOEB liberally applies its rules to benefit the incumbent and strictly against any challenger. How can anyone rehabilitate a signature, per Rule 8, that was never counted or even objected to in the first place?

18. Had a Rule 8 hearing been provided, those 554 signatures could easily been rehabilitated and this entire process would have been obviated. In fact, Jan filed 767 Affidavits attesting to the rehabilitation. Given the purposeful wholesale pervasive errors, the only painful inescapable conclusion is that a "mistake" has occurred. There is little wonder why voter apathy continues to rise!

19. If Jan's name appears on the ballot along with the incumbent's, as the only two names, any votes cast for Jan would not impair the incumbent candidate's rights.

20. If this Court determines the incumbent to be the only candidate and disallows ballots cast for Jan, the incumbent will only need one single ballot cast at the March 15, 2016 primary election.

21. Having only one name on the ballot certainly cleans up the ballot and alleviates ballot clutter. Party splintering is minimized. Excessive factionalism is ended. It accomplishes these laudable feats by impairing voters' ability to express their most cherished First Amendment rights through chosen candidates. It is not a democracy if the CCOEB, through discriminatory application of their neutral procedures, limits the ballot to only one name – the incumbent. The CCOEB operates with imperial disdain and impunity. Their discriminatory practices, unless checked, will transform our fragile

republic's democratic process (that our citizens have fought and died for) into a kingdom. The application of CCOEB Rules to achieve an improper result deprives voters of a choice.

22. CCOEB rules of practice are not of greater importance than the Fifteenth Amendment. Rule 8 does not trump the Fifteenth Amendment. The discriminatory effect is to procedurally disenfranchise those thousands of African-American voters who joined in Jan's Nomination Petition by manipulating ballot access. The procedural rules of the CCOEB, as applied, are constitutionally infirm in their effect. The CCOEB's "Jim Crow" application of its rules allows African-Americans to vote, but only for those who the CCOEB allow on the ballot, typically an incumbent. While the CCOEB at page 5 stresses §1983 only, the most chilling aspect is how the seemingly neutral procedure was systematically applied to effect a significant disproportionate actual effect upon minority voting. While not the intent, the procedure, as applied, constitutes an constitutionally impermissible barrier to voting.

## II. Reply as to Mandamus

23. Jan and Ziff's Motion for Mandamus demonstrates complete fulfillment of all requirements for issuance of the writ.

24. The CCOEB suggests at page 7 that Jan relies on an allegedly improper CCOEB. Even a cursory review of Jan's Amended Complaint demonstrates the falsity of this claim. Improper composition of the CCOEB along with its failure to recuse conflicted members and the "designee" procedure being a "clerk" merely form only a small portion of the litany of improper procedures effected by the CCOEB to disenfranchise Jan and Ziff.

25. The CCOEB suggests at page 8 that it is an adjudicatory body and as such does not perform an official, nondiscretionary duty. The official nondiscretionary duty is to count every signature submitted and to certify candidates' names on the Ballot for the March 15, 2016 Primary Election.

26. Mandamus will issue to compel the performance of ministerial duties relating to the placement of names on a ballot. Plaintiffs have a clear right to compel the CCOEB to act. Likewise, the CCOEB has a clear duty to act. Mandamus is appropriate when there is insufficient time under the Election Code to seek judicial review as the time factor alone renders exhaustion of administrative remedies futile. This

Court should issue a writ of mandamus requiring the CCOEB to overrule the Objections, declare Jan's Nomination Petition valid and add Jan's name to the printed ballot for the Primary Election on March 15, 2016.

### III. Reply as to *Younger* Abstention Doctrine and Res Judicata

27. Contrary to the CCOEB's allegations at page 9, Plaintiffs' Section 1983, voting rights and RICO claims, although initially brought by only Jan in the circuit court, were voluntarily dismissed. Consequently, all pendent jurisdiction terminated. On January 27, 2016, the Circuit Court entered an Order voluntarily dismissing these Counts from the Amended Complaint. The *Younger* doctrine of Federal Court abstention from pending state judicial proceedings, quite simply, does not apply since there is no state judicial proceeding other than direct appeal to the Illinois Supreme Court. Assuming *arguendo* application of the doctrine, there is an extraordinary pressing need for immediate equitable relief. In *Nader v. Keith*, 385 F.3d 729, 731 (7th Cir. 2004), the Seventh Circuit criticized the election board for "frivolously" making a *Younger* claim and found that abstention was not warranted by the pendency of the candidates' state court proceeding seeking a parallel remedy for the state's refusal to certify his candidacy.

28. The U.S. constitutional claims were voluntarily dismissed in the state court *prior* to any final judgment on the merits. Principles of *res judicata*, quite simply, do not attach as there was never a final ruling on the merits. In addition, Plaintiff, Ziff, was not a party to the state claims and is not precluded by the doctrine of res judicata or law of the case. Law of the case does not apply to this Court, as the only ruling has been granting Plaintiff leave to file an amended complaint adding Plaintiff, Ziff. Jan had sought a parallel state remedy. Consequently, *res judicata* does not apply to the filing of a claim in Federal court for violation of Federal constitutional rights. Injunctive relief and mandamus are remedies – not claims. There is no identity of the causes of action. Jan's claim for injunctive relief and mandamus in the State court was premised upon the Illinois statutory administrative review and open meetings act; not the federal claims which were voluntarily non-suited. Jan's and Ziff's claim for injunctive relief and mandamus in the Federal court are premised upon Federal constitutional violations and Federal statutes.

Jan and Ziff are not in privity, each asserting different rights – one a candidate and the other an African-American voter. But, even more basically, there has been no final judgment on the merits as Jan's state claims remain pending before the Illinois Supreme Court as her Petition for Leave to Appeal and Appeal as of Right was filed on February 22, 2016.

WHEREFORE, the Petitioner-Candidate/Plaintiff, JAN KOWALSKI, respectfully requests this Court grant her Motion for Injunctive Relief and Mandamus, and for such other and further relief as this court deems just.

/s/ Robert M. Kowalski
One of Plaintiffs' attorneys

Jan Kowalski and Ziff Sistrunk, Plaintiffs
Robert M. Kowalski
1918 West Cermak Road
Chicago, Illinois 60608
773/696-9698